1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   Estate of JOSEPH DURAN, deceased, by      No.  2:14-cv-02048-TLN-CKD
     and through STEVEN A. DURAN and
12   ELAINE DURAN as Successors in
     Interest; STEVEN DURAN, Individually;
13   and ELAINE DURAN, Individually,           **ORDER DENYING IN PART DEFENDANT**
                                               **CORONER RYAN'S MOTION TO**
14                      Plaintiffs,            **DISMISS AND CDCR DEFENDANTS'**
                                               **MOTION TO DISMISS**
15          v.

16   CDCR Correctional Officer ROY C.
     CHAVEZ; CDCR Correctional Officer
17   TIMOTHY NELSON; CDCR Correctional
     Officer JASON R. STRONGMAN; CDCR
18   Correctional Sergeant MARK SHEPARD;
     CDCR Correctional Sergeant JUAN C.
19   CARRILLO; CDCR Correctional
     Lieutenant BRYAN D. McCLOUGHAN;
20   CDCR Licensed Vocational Nurse
     MICHAEL; CDCR Clinical Psychologist
21   RICHARD E. ORTIGO, Psy. D.; CDCR
     Staff Psychiatrist KARUNA ANAND,
22   M.D.; CDCR Physician and Surgeon
     JANET YU, M.D.; Mule Creek State
23   Prison Chief Medical Executive SCOTT A.
     HEATLEY, M.D.; Mule Creek State
24   Prison Chief Executive Officer (Medical)
     DAVID SMILEY; Mule Creek State Prison
25   Warden and Chief Executive Officer
     WILLIAM W. KNIPP; Amador County
26   Sheriff-Coroner MARTIN A. RYAN;
     CASA BONITA, INC.; and Does 1
27   through 20,

28                     Defendants.

                                        1

This matter is before the Court pursuant to Defendant Amador County Sheriff-Coroner Martin A. Ryan's ("Coroner Ryan") Motion to Dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") (ECF No. 9) and Defendants California Department of Corrections and Rehabilitation ("CDCR") Correctional Officer Timothy Nelson ("Officer Nelson"), CDCR Correctional Officer Jason R. Strongman ("Officer Strongman"), CDCR Correctional Officer Mark Shepard ("Officer Shepard"), CDCR Correctional Sergeant Juan C. Carrillo ("Sergeant Carrillo"), CDCR Correctional Lieutenant Bryan D. McCloughan ("Lieutenant McCloughan"), CDCR Licensed Vocational Nurse Michael ("LVN Michael"), CDCR Clinical Psychologist Richard E. Ortigo, Psy. D. ("Dr. Ortigo"), CDCR Staff Psychiatrist Karuna Anand, M.D. ("Dr. Anand"), Mule Creek State Prison Chief Medical Executive Scott A. Heatley, M.D. ("Dr. Heatley"), Mule Creek State Prison Chief Executive Officer (Medical) David Smiley ("CEO Smiley"), Mule Creek State Prison Warden and Chief Executive Officer William W. Knipp's (" Warden Knipp") (collectively "CDCR Defendants") Motion to Dismiss Plaintiffs' Complaint under Rule 12(b)(6).  (ECF No. 16.)

Defendants CDCR Correctional Officer Roy C. Chavez ("Officer Chavez") and CDCR Physician and Surgeon Janet Yu, M.D. ("Dr. Yu") join in CDCR Defendants' motion solely on the grounds that Plaintiffs do not have standing or capacity to bring this action under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 19.)  Plaintiffs Estate of Joseph Duran ("Estate"), Steven A. Duran, and Elaine Duran (Collectively "Plaintiffs") filed an Opposition to Defendant Coroner Ryan's Motion (ECF No. 22) and to CDCR Defendants' Motion (ECF No. 23).  The Court has carefully considered the arguments raised in Defendants' motions and replies, as well as Plaintiffs' oppositions.  For the reasons set forth below, Defendants' Motions to Dismiss are GRANTED IN PART and DENIED IN PART.

## I.      FACTUAL BACKGROUND

### A.  Medical History and Incarceration

Decedent, Joseph Duran, suffered from a history of mental illness.  His diagnoses included bipolar disorder, depression, psychotic disorder not otherwise specified (NOS), and antisocial personality disorder.  (ECF No. 1 at ¶ 38.)  He also suffered from seizure disorder and

1    hallucinations.  (ECF No. 1 at ¶ 38.)  Duran had a known history of suicidality, suicide attempts,

2    suicidal ideation, and self-harming behavior.  (ECF No. 1 at ¶ 43.)  As a result, he was

3    hospitalized on a number of occasions in psychiatric inpatient hospitals.  (ECF No. 1 at ¶ 40.)

4    Additionally, due to a throat injury in 2007, Duran underwent a tracheal stenosis surgical

5    procedure.  (ECF No. 1 at ¶ 44.)  Due to this surgery, he breathed through a tracheostomy tube in

6    his throat.  (ECF No. 1 at ¶ 44.)  In 2012, he underwent a follow up surgical procedure at the site

7    of his stoma.  (ECF No. 1 at ¶ 44.)  Because of his surgeries and permanent stoma, Duran had a

8    limited ability to communicate.  (ECF No. 1 at ¶ 45.)  He was unable to speak loudly, but was

9    able to manipulate his tracheostomy tube to speak in a soft, whispery voice.  (ECF No. 1 at ¶ 45.)

10   He supplemented his speech through the use of non-verbal communication, including hand

11   gestures and written notes.  (ECF No. 1 at ¶ 45.)

12          Beginning in 1997, Duran was incarcerated with the CDCR on multiple occasions.  (ECF

13   No. 1 at ¶ 40.)  In previous incarcerations, the CDCR recognized Duran as a mentally ill prisoner.

14   (ECF No. 1 at ¶ 41.)  He received treatment through the Mental Health Services Delivery System

15   and his previous inpatient hospitalizations were referenced in his medical and mental health

16   records maintained by the CDCR.  (ECF No. 1 at ¶ 41.)  Duran's CDCR records indicate that his

17   treatment providers had knowledge of his previous diagnosis, psychiatric hospitalizations, and

18   suicidality, including that he had been placed on suicide watch during previous incarcerations.

19   (ECF No. 1 at ¶¶ 41, 43.)

20          Duran re-entered CDCR on August 30, 2013, at the North Kern State Prison (NKSP)

21   reception center.  (ECF No. 1 at ¶ 46.)  After a health screening, CDCR placed Duran in the

22   Mental Health Services Delivery System at the Correctional Clinical Case Management System

23   level of care.  (ECF No. 1 at ¶¶ 46, 47.)  He was proscribed Prozac, Thorazine, and Hydroxyzine.

24   (ECF No. 1 at ¶ 47.)

25          On September 2, 2013, Duran gave the correctional staff a note indicating he was suicidal.

26   (ECF No. 1 at ¶ 48.)  That same day, Duran was placed in a holding cell under suicide watch.

27   (ECF No. 1 at ¶ 50.)  A prisoner on suicide watch must be either continuously observed or

28   monitored under intervals not to exceed 15 minutes.  (ECF No. 1 at ¶ 52.)  On September 3, 2013,

1   CDCR performed another suicide risk evaluation on Duran.  (ECF No. 1 at ¶ 53.)  CDCR

2   recognized that Duran posed both a long term and an immediate risk of suicide.  (ECF No. 1 at ¶

3   53.)  Because of Duran's high risk of suicide, CDCR made the decision to transfer him to Mule

4   Creek State Prison ("MCSP").  (ECF No. 1 at ¶ 54.)  He was cleared for transport to a Mental

5   Health Crisis Bed at MCSP and was transferred on September 4, 2013.  (ECF No. 1 at ¶ 54.)

6        On September 5, 2013, Duran was seen by a nurse-practitioner, a psychologist, and a

7   psychiatrist.  (ECF No. 1 at ¶ 56.)  He told the nurse he wanted to commit suicide, and was

8   subsequently put on suicide precautions.  (ECF No. 1 at ¶ 56.)  The psychiatrist, Dr. Anand,

9   diagnosed Duran with Psychotic Disorder not otherwise specified (NOS), Mood Disorder,

10  Polysubstance Disorder in remission, and Adjustment Disorder with disturbance of emotions and

11  conduct.  (ECF No. 1 at ¶ 58.)  Dr. Anand renewed Duran's suicide precautions for the next 24

12  hours, beginning at 3:00 p.m. that day.  (ECF No. 1 at ¶ 58.)  Dr. Anand noted the need to review

13  Duran's file for diagnostic clarification in his records, but Plaintiffs allege she did not do so prior

14  to Duran's death.  (ECF No. 1 at ¶ 58.)  The psychologist, Dr. Ortigo, noted that Duran met the

15  criteria for inclusion in the Mental Health Services Delivery System and assignment to a Mental

16  Health Crisis Bed.  (ECF No. 1 at ¶ 59.)

17       At approximately 7:00 p.m. on September 5, 2013, Duran requested his medications.

18  (ECF No. 1 at ¶ 60.)  He was refused and told he must wait until medication time at 9:00 p.m.

19  (ECF No. 1 at ¶ .)  When the medications were administered, he refused them.  (ECF No. 1 at ¶

20  60.)

21            B.  September 6, 2013

22       The morning of September 6, 2013, Duran again refused his medication.  (ECF No. 1 at ¶

23  61.)  He also refused to be voluntarily handcuffed to leave his cell ("cuffed up") and attend his

24  treatment team meeting.  (ECF No. 1 at ¶ 61.)  Dr. Ortigo prepared the mental health treatment

25  plan for Duran on September 6, 2013, and ordered that Duran remain in Mental Health Crisis Bed

26  placement for ongoing evaluation and treatment.  (ECF No. 1 at ¶¶ 62, 63)  Plaintiffs allege Dr.

27  Ortigo noted that, since his transfer to MCSP, Duran had become "much worse, anxious, agitated,

28  restless, frantic, refusing to cuff up in order to be removed from his cell for morning rounds… He

4

has also been refusing his meds and refusing to eat, communicating his belief that his food and medication are poisoned. Keyhea watch[1] was initiated this date."  (ECF No. 1 at ¶ 63.)  However, MCSP lacked protocols for monitoring inmates for Keyhea criteria, which Plaintiffs allege is due to a failure by CEO Smiley and Warden Knipp to implement such protocols at MCSP.  (ECF No. 1 at ¶ 64.)

At 3:30 p.m., Plaintiffs allege Dr. Anand wrote a progress note stating that Duran was "verbalizing paranoia and fear of correctional officers and that, per the nursing staff, he had been up all night using the call light 'with some demands or other.'"  (ECF No. 1 at ¶ 70.)  Dr. Anand ordered Duran's suicide watch to be continued for the next 24 hours and ordered that Duran "be monitor[ed] for violence towards others due to his paranoia."  (ECF No. 1 at ¶ 70.)  Subsequently, Dr. Anand countermanded the order for continued suicide watch before it went into effect.  (ECF No. 1 at ¶ 71.)  Instead, Dr. Anand placed Duran on "violence precaution."  (ECF No. 1 at ¶ 71.)  However, Plaintiffs state that "violence precautions" are not part of MCSP or CDCR sanctioned policy or procedure.  (ECF No. 1 at ¶ 72.)  Dr. Anand did not document any clinical rational for discontinuing suicide precautions for Duran, nor did she examine Duran or receive a report that his condition had improved.  (ECF No. 1 at ¶ 73.)  As a result of being taken off suicide precautions, Duran was no longer monitored every 15 minutes.  (ECF No. 1 at ¶ 75.) Additionally, Dr. Anand did not document a psychiatric assessment of the Keyhea criteria for involuntary medication as ordered by Dr. Ortigo.  (ECF No. 1 at ¶ 74.)

At 5:00 p.m., Duran requested his medications.  (ECF No. 1 at ¶ 77.)  He was denied and told he would have to wait until 9:00 p.m.  (ECF No. 1 at ¶ 77.)  At approximately 8:30 p.m., Officer Nelson, Officer Chavez, and LVN Michael began medication rounds.  (ECF No. 1 at ¶ 78.)  When they reached Duran's cell, he initially agreed to take his medication.  (ECF No. 1 at ¶ 79.)  He put his hands outside the open food port in his cell door, but then refused to cuff up and refused to remove his hands from the food port.  (ECF No. 1 at ¶¶ 79, 80.)  Sergeant Shepard was

---

[1] Putting a prisoner on Keyhea watch indicates a treating doctor is assessing that prisoner for involuntary medication. In order for a prison to administer drugs involuntarily to a prisoner, the prisoner must meet the criteria laid out in *Keyhea v. Rushen*, 178 Cal.App.3d 536 (1986).

called to the scene and authorized Officer Chavez, by way of a non-verbal nod, to use oleoresin capsicum pepper spray on Duran.  (ECF No. 1 at ¶¶ 81, 82.)  Officer Chavez sprayed Duran directly in his face and neck, which were pressed up against the open food port.  (ECF No. 1 at ¶ 82.)  The pepper spray went directly into Duran's throat through his tracheostomy tube causing immediate pain, breathing, and communication difficulty.  (ECF No. 1 at ¶¶ 82, 87.)  Duran recoiled from the cell door and Officer Chavez closed the food port.  (ECF No. 1 at ¶ 86.)  Plaintiffs further allege that there were no discussions prior to the use of pepper spray regarding alternate or lesser uses of force, or if there was a need to use force.  (ECF No. 1 at ¶ 85.)

Upon being pepper sprayed, Duran exhibited signs of distress.  (ECF No. 1 at ¶ 87.)  He reacted to intense pain in his tracheostomy site and was having difficulty breathing and communicating.  (ECF No. 1 at ¶ 87.)  Plaintiffs allege Officer Chavez, Officer Nelson, and LVN Michael saw Duran in obvious distress, but failed to take necessary steps to secure medical treatment for Duran.  (ECF No. 1 at ¶¶ 87, 88.)  Similarly, Plaintiffs allege Sergeant Shepard, who witnessed the use of pepper spray, failed to take control of the situation by intervening.  (ECF No. 1 at ¶ 89.)  Duran was not given any writing utensils and as such could not communicate his needs, pain, or physical distress effectively.  (ECF No. 1 at ¶ 90.)  Duran again refused to be cuffed up to be taken from his cell for decontamination.  (ECF No. 1 at ¶ 91.)

Sergeant Shepard called the on-duty Watch Commander, Lieutenant McCloughan, to the scene.  (ECF No. 1 at ¶ 93.)  Lieutenant McCloughan arrived and, against CDCR rules regarding pepper spray decontamination, did not direct his subordinates to decontaminate Duran or get him medical assistance.  (ECF No. 1 at ¶ 93.)  Instead, Duran was left in his cell.  (ECF No. 1 at ¶ 94.)  Various staff saw Duran in his cell coughing up blood.  (ECF No. 1 at ¶ 95.)  They observed him attempting to alleviate the pain by removing his tracheostomy tube, placing his finger in the stoma, and rubbing the area vigorously.  (ECF No. 1 at ¶ 95.)  Officer Chavez, Officer Nelson, Sergeant Shepard, Lieutenant McCloughan, and LVN Michael were all present and Plaintiffs allege that they all failed to secure or provide medical care for Duran.  (ECF No. 1 at ¶ 95.)

At 10:10 p.m., a nurse called the Medical Officer on duty, Dr. Yu, and reported the situation.  (ECF No. 1 at ¶ 96.)  Dr. Yu consulted with Dr. Heatley by telephone and ordered the

1   nursing staff to evacuate Duran from his cell, remove and clean his tracheostomy tube, to clean

2   the stoma site, and to reinsert the tracheostomy tube.  (ECF No. 1 at ¶ 96.)  Dr. Yu also ordered

3   that Duran be monitored for respiratory distress.  (ECF No. 1 at ¶ 96.)

4        At 10:35 p.m., a nurse called Dr. Anand, Duran's treating psychiatrist.  (ECF No. 1 at ¶

5   97.)  Dr. Anand also ordered that Duran be removed from his cell for decontamination as well as

6   be placed in a holding cell and administered 10 mg of Zyprexa intramuscularly.  (ECF No. 1 at ¶

7   97.)  Both Dr. Yu and Dr. Anand's orders were relayed by the nurses to custody staff including

8   Officer Strongman, the Sergeant on Duty, and Lieutenant McCloughan.  (ECF No. 1 at ¶¶ 98, 99.)

9   Plaintiffs allege that custody staff refused to comply.  (ECF No. 1 at ¶ 99.)  Specifically, Plaintiffs

10  allege that Officer Strongman verbalized a decision to leave Duran in the cell and the Sergeant on

11  Duty and Lieutenant McCloughan each acquiesced to Officer Strongman's decision.  (ECF No. 1

12  at ¶ 101.)  The Administrative Officer-of-the-Day was also informed of the situation, the doctors'

13  orders, and Officer Strongman's decision to leave Duran in his cell despite those orders.  (ECF

14  No. 1 at ¶ 102.)  Plaintiffs allege the Administrative Officer-of-the-Day ratified the correctional

15  staff's decision to disregard the doctors' orders and refusal to remove Duran from his cell for

16  medical treatment.  (ECF No. 1 at ¶ 102.)

17       Sergeant Shepard similarly ignored the doctors' orders, deciding that Duran had

18  sufficiently decontaminated himself and it was unnecessary to remove him from his cell.  (ECF

19  No. 1 at ¶ 103.)  Plaintiffs allege that, again, Lieutenant McCloughan and the Administrative

20  Officer-of-the-Day acquiesced to this decision.  (ECF No. 1 at ¶ 103.)  The nurses were informed

21  that correctional staff were disregarding the doctors' orders, but did not report it.  (ECF No. 1 at ¶

22  104.)  Plaintiffs allege that this is because MCSP had no written or unwritten policies or

23  guidelines for medical staff to take upon learning that correction staff was choosing to ignore

24  doctor's orders.  (ECF No. 1 at ¶ 104.)

25       Correctional staff and medical staff observed Duran remove his tracheostomy tube and put

26  his fingers and foreign objects into his stoma.  (ECF No. 1 at ¶ 106.)  Specifically, Duran put food

27  in his stoma which could be seen protruding from the hole.  (ECF No. 1 at ¶ 106.)  A nurse again

28  called Dr. Yu to report that custody staff had refused to comply with doctors' orders and that

Duran was still in his cell having difficulty breathing.  (ECF No. 1 at ¶ 107.)  Plaintiffs allege that Dr. Yu responded, "If the inmate is walking around, how can he be in distress?"  (ECF No. 1 at ¶ 107.)  She instructed the nurse to only contact her if it was something important.  (ECF No. 1 at ¶ 107.)  Dr. Yu was not contacted again until after Duran's death.  (ECF No. 1 at ¶ 107.)

Duran was monitored sporadically for the next several hours.  (ECF No. 1 at ¶ 109.)  At 5:07 a.m. on September 7, 2013, during morning medication distribution, a correctional officer and nurse noticed Duran was on the floor of his cell not breathing and unresponsive.  (ECF No. 1 at ¶ 110.)  Correctional officers entered Duran's cell and began CPR at 5:17 a.m.  (ECF No. 1 at ¶ 112.)  The resuscitation efforts continued for several minutes, but were unsuccessful.  (ECF No. 1 at ¶ 112.)  Duran was pronounced dead at 5:40 a.m. on September 7, 2013.  (ECF No. 1 at ¶ 113.)

C.  Subsequent Events

Dr. Yu authored the "MCSP Initial Inmate Death Report" on September 10, 2013.  (ECF No. 1 at ¶ 115.)  Plaintiffs state that Dr. Yu failed to honestly and accurately report the events and circumstances leading up to Duran's death.  (ECF No. 1 at ¶ 115.)  Additionally, Plaintiffs allege several other individuals gave false or incomplete statements in connection with internal and external reports and investigations.  (ECF No. 1 at ¶ 114.)  Plaintiffs maintain that no one at CDCR made an attempt to locate Duran's next of kin despite the fact that Duran's parents' contact information was publicly listed and the CDCR had access to confidential databases.  (ECF No. 1 at ¶¶ 121, 122.)

On September 7, 2013, the Amador County Sheriff-Coroner, Coroner Ryan, took custody of Duran's remains and performed an autopsy.  (ECF No. 1 at ¶ 123.)  Plaintiffs allege Coroner Ryan was provided with false information by Dr. Yu, Sergeant Carrillo, Dr. Heatley, and/or CEO Smiley for use in determining cause of death.  (ECF No. 1 at ¶ 116.)  The Coroner determined the cause of death was asphyxia and classified the death as a suicide.  (ECF No. 1 at ¶ 117.)  Subsequently, however, Plaintiffs allege Duran's death was characterized as the psychiatric equivalent of an accident by Warden Knipp and other high ranking officials.  (ECF No. 1 at ¶ 118.)  At no time did Coroner Ryan make an attempt to contact Duran's next of kin.  (ECF No. 1 at ¶ 123.)

1    Duran's body was transferred to Casa Bonita Funeral Home in Stockton, California.  (ECF

2    No. 1 at ¶ 124.)  On September 24, 2013, Duran's body was cremated.  (ECF No. 1 at ¶ 124.)

3    Casa Bonita Funeral Home never attempted to contact Duran's next of kin.  (ECF No. 1 at ¶ 124.)

4    After Duran was cremated, his ashes were scattered out to sea.  (ECF No. 1 at ¶ 124.)

5    Plaintiffs allege Warden Knipp and others falsely represented that Duran's next of kin

6    could not be found.  (ECF No. 1 at ¶ 125.)  Duran's parents, Steven and Elaine Duran, only

7    learned about their son's death when they were contacted on January 8, 2014, by a reporter from

8    the Sacramento Bee.  (ECF No. 1 at ¶ 128.)  That reporter was able to find Steven and Elaine

9    Duran by telephoning people in the Los Angeles area named Steven Duran.  (ECF No. 1 at ¶

10   128.)

11   **II.    STANDARD OF LAW**

12   A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

13   12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

14   2001).  Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

15   statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556

16   U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

17   defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic*

18   *v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

19   pleading standard relies on liberal discovery rules and summary judgment motions to define

20   disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*,

21   534 U.S. 506, 512 (2002).

22   On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

23   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

24   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

25   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

26   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

27   relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

28   factual content that allows the court to draw the reasonable inference that the defendant is liable

1   for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (2007)).

2          Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

3   factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

4   1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

5   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

6   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

7   elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

8   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

9   statements, do not suffice").  Moreover, it is inappropriate to assume that the plaintiff "can prove

10  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

11  been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

12  459 U.S. 519, 526 (1983).

13         Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

14  facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

15  *Twombly*, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[] [his or her] claims … across

16  the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680.  While

17  the plausibility requirement is not akin to a probability requirement, it demands more than "a

18  sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a

19  context-specific task that requires the reviewing court to draw on its judicial experience and

20  common sense." *Id.* at 679.

21         In ruling upon a motion to dismiss, the court may consider only the complaint, any

22  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

23  Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

24  *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

25  1998).

26         If a complaint fails to state a plausible claim, "[a] district court should grant leave to

27  amend even if no request to amend the pleading was made, unless it determines that the pleading

28  could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

1    (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see*

2    *also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

3    denying leave to amend when amendment would be futile).  Although a district court should

4    freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

5    deny such leave is 'particularly broad' where the plaintiff has previously amended its

6    complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

7    2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

8        **III.    ANALYSIS**
             A. <u>Standing</u>

9

10                    *i.    Standing as to the First, Second, Third, Fourth, and Fifth Causes of
                            Action*

11        Plaintiffs bring their first, third, fourth, and fifth causes of action under 42 U.S.C. § 1983,

12    alleging excessive force in violation of the Eighth Amendment, deliberate indifference in

13    violation of the Eighth Amendment, supervisory liability, and failure to supervise, respectively.

14    Plaintiffs' second cause of action for excessive force is brought under Cal. Constitution Art. I and

15    Cal Civil Code § 43, actionable under Cal Civil Code § 52.1.  Each of these claims is a survival

16    action made on behalf of the Decedent.  The CDCR Defendants argue that the first, second, third,

17    fourth, and fifth causes of action fail because Plaintiffs, as decedent's parents, do not have

18    standing to bring these actions.  (ECF No. 16-1 at 16–17.)  The Court finds that Plaintiffs have

19    not pled sufficient facts to comply with California Code of Civil Procedure § 377.32 ("Cal. Code

20    Civ. Pro. § 377.32") and as such, have not established standing.  These causes of action are

21    dismissed with leave to amend.

22        Pursuant to Federal Rule of Civil Procedure 17(b)(3) the capacity to sue a public officer is

23    determined by "the law of the state where the court is located."  Fed. R. Civ. Pro. 17(b)(3).

24    Further, "[a] claim under 42 U.S.C. § 1983 survives the decedent if the claim accrued before the

25    decedent's death, and if state law authorizes a survival action."  *Tatum v. City & Cnty. of San*

26    *Francisco*, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006).  Generally, a survival claim is filed by the

27    estate's personal representative, however, "[w]here there is no personal representative for the

28

1   estate, the decedent's "successor in interest" may prosecute the survival action if the person

2   purporting to act as successor in interest satisfies the requirements of California law[.]" *Tatum*,

3   441 F.3d at 1094 n.2. (citing *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th

4   Cir.1998); Cal. Code Civ. Pro. § 377.30, 377.32).

5       Plaintiffs acknowledge that they seek to bring this action as successors in interest of

6   decedent. (ECF No. 23 at 3.)  Cal. Code of Civ. Pro. § 377.32 requires a person seeking to bring

7   a suit as successor in interest to file an affidavit stating specific information as detailed by the

8   statute in order to have standing.  Plaintiffs have failed to file such an affidavit stating the specific

9   information as required by § 377.32.  In their opposition brief, Plaintiffs mistakenly rely on

10  *George v. Morris*, 736 F.3d 829 (9th Cir. 2013).  (ECF No. 23 at 3.)  However, in *Morris*,

11  Plaintiff wasn't the successor in interest to her husband's claim under 42 U.S.C. § 1983, rather,

12  she was the personal representative of her husband's estate.[2]  Further, the district court noted that

13  the plaintiff therein had complied with Cal. Code of Civ. Pro. §§ 377.30 and 377.32.  *Morris*, 736

14  F.3d at 833, note 6.  Therefore, in order for Plaintiffs to have standing in the instant case, they

15  must comply with Cal. Code of Civ. Pro. § 377.32, which they have failed to do.  Thus, Counts I,

16  II, III, IV, and V are dismissed with leave to amend.

17           *ii.   Standing as to the Seventh Cause of Action: Wrongful Death*

18      Plaintiffs bring a wrongful death action under Cal Code of Civ. Pro. § 377.60 et seq.[3]

19  against Defendants as their seventh cause of action.  The CDCR Defendants contend that

20  Plaintiffs have failed to establish standing to bring a wrongful death action because they

21  neglected to allege that the decedent did not have a spouse or any other issue.  (ECF No. 16-1 at

22  15–16.)  In California, standing to sue in a wrongful death action is governed by Cal. Code of

23  Civ. Pro. § 377.60, and the category of persons eligible to bring a wrongful death action is

24  narrowly interpreted.  *Steed v. Imperial Airlines*, 12 Cal. 3d 115, 119-20 (1974).  Cal. Code of

25

26  [2] "The § 377.32 declaration requirement is not applicable to those seeking to commence suit as the personal
    representative of a decedent." *Garcia v. Adams*, No. F 04-5999 AWI SMS, 2006 WL 403838, at *12, n. 13 (E.D. Cal.
    Feb. 17, 2006).

27  [3] Plaintiffs also cite Cal Code of Civ. Pro. § 377.10 et seq. in support of Count VII, but the Court believes the
    Complaint is in error and § 377.60 et. seq. is the section to which Plaintiffs' intended to refer.

28

12

Civ. Pro. § 377.60 gives standing to bring a wrongful death action first to the decedent's personal representative, then to the "decedent's surviving spouse, domestic partner, children, and issue of deceased children." The statute goes on to instruct that if there are no issue, then the persons who would be entitled to the property of the decedent by intestate succession have standing to sue for wrongful death.

Plaintiffs argue that because they allege that decedent's parents are his next of kin, they have established the absence of issue or surviving spouses and have standing under Cal. Code of Civ. Pro. § 377.60. (ECF No. 23 at 3–4.) Additionally, Plaintiffs have affirmatively stated that the decedent has "no surviving spouse or surviving children or issue of children." (ECF No. 1 at ¶ 161.) Defendants cite *Nelson v. Cnty. of Los Angeles* for the proposition that Plaintiffs must plead and prove standing. 113 Cal. App. 4th 783, 789 (2004). However, *Nelson* notes that "[i]t would be one thing to require additional proof if a known heir asserted a competing claim, but it is quite another to require the parents of a deceased adult child to disprove an unsubstantiated claim that the decedent might at some time, in some unknown place, have had a child." *Id.* at 790. In the instant case, Defendants allege the existence of a child of the decedent, but do not offer any evidence is support of this allegation.[4] (ECF No. 16-1 at 26.) Thus, Plaintiffs, having affirmatively alleged decedent has no surviving children or spouse, have pleaded sufficient facts to establish standing to bring a wrongful death action under § 377.60. Defendants' Motion to Dismiss Plaintiffs' seventh cause of action for lack of standing is hereby denied.

### iii.   Standing of the Estate

Both the CDCR Defendants and Defendant Coroner Ryan argue that the estate of Joseph Duran does not have standing to bring suit because "an estate is not a legal entity and therefore has no capacity to sue." (ECF No. 16-1 at 18–19 (citing *Gladjie v. Darwish*, 113 Cal. App. 4th 1331 (2003)); ECF No. 9-1 at 11–12.) "A cause of action that survives the death of the person entitled to commence [it] ... may be commenced by the decedent's personal representative, or, if

---

[4] If Defendants are able to locate a child of the deceased, a subsequent motion must be brought before this Court immediately.

13

1    none, by the decedent's successor in interest."  Cal. Code of Civ. Pro. § 377.30.[5]  Although

2    Defendants seem to read the named parties as including the estate, the Court understands the

3    named parties to mean that the successors in interest are bringing the claims on behalf of the

4    estate, not the estate itself.  *Gladjie v. Darwish*, 113 Cal. App. 4th at 1344 (holding that an estate

5    has no capacity to sue and therefore a legal action must be maintained by an executor or

6    administrator).  Since the Court finds that the estate is not a named party to the instant action,

7    there is no need to dismiss.

8                    B.  Third Cause of Action: Deliberate Indifference to Serious Medical Needs

9           Plaintiffs bring a claim under 42 U.S.C. § 1983, alleging that CDCR Defendants

10   demonstrated deliberate indifference to Decedent's serious medical needs, health, and safety in

11   violation of the Eighth Amendment.  (ECF No. 1 at 26.)  The CDCR Defendants argue that this

12   cause of action should be dismissed as to Dr. Anand because the Plaintiffs have not pled

13   sufficient facts to establish deliberate indifference.  The Court finds that Plaintiffs have pled

14   sufficient facts to support this cause of action and Defendants' motion as to Count III is hereby

15   denied.

16          "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently

17   harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference

18   that can offend evolving standards of decency in violation of the Eighth Amendment."  *Estelle v.*

19   *Gamble*, 429 U.S. 97, 105-06 (1976) (internal quotations omitted.)  The state of mind required to

20   show deliberate indifference is subjective recklessness.  But the standard is "less stringent in

21   cases involving a prisoner's medical needs ... because 'the State's responsibility to provide

22   inmates with medical care ordinarily does not conflict with competing administrative concerns.'"

23   *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (partially overruled on other grounds)

24   (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)) (alterations omitted).

25          While Defendants focus on Dr. Anand's actions after Duran was pepper sprayed (ECF No.

26   _____

27   [5] This Court has ruled relative to Counts I, II, III, IV, and V, that in order for Plaintiffs to bring suit on behalf of the estate of Joseph Duran, Plaintiffs must amend the complaint and establish they are the successors in interest by following the requirements of Cal. Code of Civ. Pro. § 377.32, discussed herein, *supra*.

28

14

1    16-1 at 18–19), Plaintiffs explain in their opposition brief that the basis for their claim of

2    deliberate indifference in regard to Dr. Anand is her choice to take Duran off suicide watch.

3    (ECF No. 23 at 4–6.)  Plaintiffs support their allegation by arguing that Dr. Anand took Duran off

4    suicide watch without performing an examination of Duran, giving no clinical rationale for the

5    change, and without receiving any information that Duran's condition had improved.  (ECF No. 1

6    at ¶ 73.)  At this stage, the Plaintiffs have to plead only enough facts to state a plausible claim.

7    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

8    draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

9    U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (2007)).  The Court finds that, given the above

10   facts, there is a reasonable inference Dr. Anand possessed the requisite state of mind for

11   deliberate indifference.  Therefore, the Court finds that this action is sufficiently pled to support a

12   claim of deliberate indifference.

13                    C.   Fourth Cause of Action: Supervisory Liability based on Customs, Practices, or

14                         Policies

15          Plaintiffs bring their fourth cause of action under 42 U.S.C. § 1983 against Dr. Heatley,

16   CEO Smiley, and Warden Knipp, arguing that their actions demonstrated supervisory liability

17   based on customs, practices, or policies.  (ECF No. 1 at 27.)  The CDCR Defendants argue that

18   Plaintiffs' fourth cause of action should be dismissed because the Complaint is "devoid of any

19   factual allegation linking Dr. Heatley, CEO Smiley, or Warden Knipp with a constitutional

20   deprivation."  (ECF No. 16-1 at 20–21.)  Defendants assert that a plaintiff must establish that the

21   defendant had personally established a policy that was repugnant to the Constitution and was the

22   moving force in a constitutional violation in order to state a claim.  (ECF No. 16-1 at 19–20

23   (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-92 (1978); *Ivey v. Bd. of Regents*, 673 F.

24   2d 266, 268 (9th Cir. 1982)).)  However, in a motion to dismiss, "[the] level of particularity and

25   notice is sufficient where … it may be fairly assumed that Defendants have access to past events

26   and to statements of policy that will either prove or disprove Plaintiffs' allegations."  *Phillips v.*

27   *Cnty. of Fresno*, No. 1:13-CV-0538 AWI BAM, 2013 WL 6243278, at *10 (E.D. Cal. Dec. 3,

28   2013).   Here, the Court finds that Plaintiffs' allegations for supervisory liability are sufficient

1    where it may be presumed that Defendants are in sole possession of facts needed to support or

2    refute the claims.  *Id.* (denying defendant's motion to dismiss a claim of supervisory liability on

3    similar grounds).

4            Plaintiffs allege the supervisors involved and the policies in question, or lack thereof,

5    resulted in a constitutional deprivation.  Plaintiffs' complaint provides notice to Defendants

6    regarding what information will be sought from what sources during discovery.  On these

7    grounds, the Court cannot find a basis to grant CDCR Defendants' motion to dismiss this count.

8    CDCR Defendants' motion to dismiss is denied as to the fourth cause of action.

9                    D.  Fifth Cause of Action: Failure to Supervise, Investigate, and Discipline

10           Plaintiffs bring their fifth cause of action for failure to supervise, investigate, and

11   discipline under 42 U.S.C. § 1983 against Sergeant Carrillo, Lieutenant McCloughan, Dr. Yu, Dr.

12   Heatley, CEO Smiley, and Warden Knipp.  (ECF No. 1 at 1¶¶ 151–154.)  The CDCR Defendants

13   argue that there are not sufficient facts pled to state a claim for supervisory liability under the fifth

14   cause of action and move to dismiss it. (ECF No. 16-1 at 21.)  Plaintiffs concede that there are

15   insufficient facts as to Dr. Heatley, CEO Smiley, and Warden Knipp and request leave to amend.[6]

16   (ECF No. 23 at 7.)  As to these defendants, the Court dismisses the fifth cause of action with

17   leave to amend.

18           As to the remaining Defendants named in Plaintiff's fifth cause of action, Sergeant

19   Carrillo and Lieutenant McCloughan, the Court denies the motion to dismiss.  As discussed

20   above, where most of the information needed to support a claim is in the defendants' custody and

21   not available to plaintiffs prior to discovery, a more conclusory and formulaic approach to

22   pleadings is acceptable.  *Phillips*, 2013 WL 6243278, at *10.  Plaintiffs need only provide

23   information "sufficient to supply notice to Defendants as to the sorts of information they will

24   need to provide to refute, if they can, Plaintiffs' allegations in a subsequent motion for summary

25   judgment."  *Id*.  Here, there are enough facts pled as to Lieutenant McCloughan's actions and

26   _____

     [6] If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to
     amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of

27   other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d
     484, 497 (9th Cir. 1995).

28

                                                          16

1   failures in supervising his subordinates, including his personal observations of Duran's distress

2   and his subordinates' failure to acquire medical treatment for Duran.  (ECF No. 1 at ¶¶ 93, 95.)

3   As to Sergeant Carrillo, there are sufficient facts alleging the liability of the Sergeant on Duty and

4   Plaintiffs are unable, without discovery, to determine if Sergeant Carrillo was the Sergeant on

5   Duty.  (ECF No. 1 at ¶¶ 99–101.)  However, Plaintiffs have pled sufficient facts to indicate that,

6   upon their information and belief, Sergeant Carrillo was performing the role of Sergeant on Duty

7   at the time of Duran's injuries and subsequent death.  (ECF No. 1 at ¶ 24.)  The Court denies the

8   request to dismiss Plaintiffs' claim for supervisory liability as to Lieutenant McCloughan and

9   Sergeant Carrillo at this stage of the proceeding.

10               E.   Sixth Cause of Action: Substantive Due Process – Loss of Parent/Child

11                    Relationship

12        In their sixth cause of action, Plaintiffs allege a violation of Fourteenth Amendment

13   substantive due process under 42 U.S.C. § 1983 for the loss of the parent/child relationship

14   against Defendants Officer Chaves, Officer Nelson, LVN Michael, Officer Strongman, Sergeant

15   Shepard, Sergeant Carrillo, Lieutenant McCloughan, Dr. Anand, Dr. Heatley, CEO Smiley, Dr.

16   Yu, and Warden Knipp.  (ECF No. 1 at ¶¶ 155–159.)  The CDCR Defendants seek to dismiss the

17   sixth cause of action as to Sergeant Carrillo, Warden Knipp, CEO Smiley, Dr. Anand, and Dr.

18   Heatley.  The CDCR Defendants contend there are no facts alleging the conduct preceding

19   Decedent's death on the part of these Defendants shocks the conscience.  (ECF No. 16-1 at 22–

20   23.)  Plaintiffs agree with Defendants' instant contentions as to Sergeant Carrillo, Warden Knipp,

21   CEO Smiley, and Dr. Heatley.  (ECF No. 23 at 8.)  Because of Plaintiffs' concession, the Court

22   dismisses the sixth cause of action as to Sergeant Carrillo, Warden Knipp, CEO Smiley, and Dr.

23   Heatley with leave to amend.

24        However, Plaintiffs argue that there are sufficient facts pled to allege conduct preceding

25   Decedent's death that shocks the conscience on the part of Dr. Anand.  In their brief, Defendants

26   correctly state the standard as follows:

27

28               "Parents may assert a Fourteenth Amendment substantive due
                 process claim where they are deprived of their liberty interest in the

17

companionship and society of their child through official conduct. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010), citing *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Just as deliberate indifference of prison officials to the medical needs of prisoners may support Eight Amendment liability, such indifference may also "rise to the conscience-shocking level" required for a substantive due process violation. *Lewis*, 523 U.S. at 849-50. A prison official's deliberately indifferent conduct will generally "shock the conscience" so long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner. *See Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009)."

(ECF No. 16-1 at p. 22.)

As discussed in Section III.b., *supra*, Plaintiffs have alleged sufficient facts to state a claim of deliberate indifference on the part of Dr. Anand.  Furthermore, it is reasonable to assert that Dr. Anand had time to deliberate before deciding to remove Duran from suicide watch, and as such her alleged conduct could rise to the level required to shock the conscience.  The Court finds no basis to dismiss Plaintiffs' claim under Rule 12(b)(6) given these alleged facts.  Therefore, the Court finds this action is sufficiently pleaded to support the sixth cause of action against Dr. Anand.

F.   Seventh Cause of Action: Wrongful Death

Plaintiffs bring their seventh cause of action for wrongful death due to professional negligence and/or medical malpractice under Cal. Code Civ. Proc. § 377.10 et seq. against Defendants Dr. Ortigo, Dr. Anand, Dr. Yu, and Dr. Heatley.  CDCR Defendants move to dismiss this cause of action with respect to Dr. Ortigo and Dr. Heatley, only.

As a threshold matter, CDCR Defendants argue that Plaintiffs have failed to state a claim for wrongful death against Dr. Heatley because Plaintiffs have not pled facts sufficient to allege negligence.  (ECF No. 16-1 at 23–24.)  The Court agrees.  Although Plaintiffs name Dr. Heatley in the caption of their seventh cause of action, they fail to mention Dr. Heatley specifically within their factual allegations, leaving the Court unclear as to Plaintiffs' complaints against him.  (ECF No. 1 at ¶¶ 160–169.)  CDCR Defendants rightly point out that Plaintiffs have failed to allege a

1    claim with respect to Dr. Heatley (ECF No. 16-1 at 23–24) and Plaintiffs appear to concede,

2    requesting leave to amend their complaint with respect to Dr. Heatley (ECF No. 23 at 9.).  If a

3    complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no

4    request to amend the pleading was made, unless it determines that the pleading could not possibly

5    be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

6    (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)).  On these grounds, the

7    Court dismisses the seventh cause of action as to Dr. Heatley, with leave to amend.

8            CDCR Defendants further argue that Plaintiffs' have also failed to state a claim against

9    Dr. Ortigo.  Unlike Dr. Heatley, Plaintiffs do allege specific facts as to Dr. Ortigo.  (ECF No. 1 at

10   ¶ 163–164.)  Therefore, the Court denies CDCR Defendants' motion to dismiss Count VII.

11   Defendants correctly describe the legal standard for wrongful death as follows:

12               "California Code of Civil Procedure section 377.60 creates an
             action for wrongful death only when the death "is caused by the
13           wrongful act or neglect of another." The phrase "wrongful act"
             means a "tortious act," including actions based on either negligence
14           or intentional wrongful conduct. *Barrett v. Superior Court*, 222 Cal.
             App. 3d 1176, 1183, 1191 (1990) (interpreting former Cal. Civ.
15           Proc. Code § 377, now Cal. Civ. Proc. Code § 377.60). Thus,
             Plaintiffs can prevail on their wrongful death claim by merely
16           establishing negligence. Negligence has been defined as "the want
             of such care as a person of ordinary prudence would exercise under
17           the circumstances of the case, . . . [and] may consist in heedlessly
             doing an improper thing or heedlessly refraining from doing a
18           proper thing." *Crabbe v. Rhoades*, 101 Cal. App. 503, 510 (1929)."

19   (ECF No. 16-1 at 23.)

20           In the Complaint, Plaintiffs allege negligence on the part of Dr. Ortigo and allege that he

21   put Duran on a meaningless order for Keyhea Watch.  (ECF No. 1 at ¶ 64.)  They further allege

22   that Dr. Ortigo failed to note Duran's risk of suicide.  (ECF No. 1 at ¶65.)  These facts, when

23   viewed under the pleading requirement of plausibility, are sufficient to state a claim of

24   negligence, and therefore wrongful death against Dr. Ortigo.  The Court finds no basis on which

25   to dismiss the seventh cause of action against Dr. Ortigo.  CDCR Defendants' motion to dismiss

26   the seventh cause of action as to Dr. Ortigo is denied.  Plaintiffs' claims under Count VII with

27   respect to Dr. Ortigo, Dr. Anand, and Dr. Yu will proceed.

28   / / /

G. <u>Eighth Cause of Action: Failure to Discharge Duty to Locate and Notify</u>

   <u>Decedent's Next of Kin</u>

Plaintiffs bring their eighth cause of action under California Government Code §§ 815.6, 27471 and California Health and Safety Code §§ 7104, 7104.1 against Warden Knipp and Coroner Ryan arguing Defendants breached their duty by failing to act with reasonable diligence in locating a family member before cremating Joseph Duran's remains and as a result they experienced emotional distress.  (ECF No. 1 at ¶ 172.)  California Government Code § 27471 and California Health and Safety Code §§ 7104, 7104.1 place a duty on a coroner to make a reasonable effort to find and inform the decedent's next of kin of the decedent's death.

*i.   CDCR Defendants' Motion to Dismiss*

The CDCR Defendants argue that the eighth cause of action should be dismissed as to Warden Knipp because the statutory basis for the claim places the obligation squarely on Defendant Coroner Ryan.  (ECF No. 16-1 at 24–25.)  Plaintiffs fail to plead the cause of action under statutes that establish a duty on the part of Warden Knipp to inform the decedent's next of kin and therefore have not established liability on the part of Warden Kip.  Plaintiffs acknowledge that they did not allege the eighth cause of action under California Code of Regulations Title 15 § 3357, California Penal Code §§ 5022 and 5061, or California Health and Safety Code § 7100.  (ECF No. 23 at 11 n. 2.)  California law imposes a duty on the prison to make reasonable attempts to notify next of kin upon the death of an inmate.[7]  However, as it relates to Warden Knipp, since Plaintiffs did not allege the eighth cause of action under the appropriate statute, the Court dismisses the eighth cause of action as to Warden Knipp[8] with leave to amend.

*ii.   Defendant Coroner Ryan*

Defendant Coroner Ryan argues that statutory liability does not apply because

---

[7] California Code of Regulations Title 15 § 3357(e) requires prisons to have on file a current Notification in Case of Inmate Death, Serious Injury, or Serious Illness, which includes contact information for the person to be notified. § 3357(f) requires the prison to "attempt to notify individual(s) listed on the Notification in Case of Inmate Death, Serious Injury, or Serious Illness as the person(s) to be notified of the death, in person, or, if personal contact is not practical, by telephone."  Similarly, California Penal Code § 5022 requires that the Director of Corrections obtain the last known address and telephone number from a prisoner upon entry into the prison, and every year thereafter.
[8] Plaintiffs assert in their Opposition that the claim is also against CEO Smiley (ECF No. 23 at 9), however CEO Smiley is not listed as a defendant in the Complaint.  (ECF No. 1 at 32)

1   Government Code §§ 815.6 and 27471(a) and Health and Safety Code §§ 7104 and 7104.1 apply

2   to embalming and not cremation. (ECF No. 9-1 at 25.) Defendant Coroner Ryan contends that

3   because he lacked exclusive custody and reporting duties, the CDCR was in a better position to

4   locate and notify Duran's next of kin. (ECF No 9-1 at 26–27.) He further argues that the

5   Government Code was enacted primarily to prevent additional expenses to the treasury. (ECF

6   No. 9-1 at 26.) The Court finds these arguments unavailing and declines to dismiss Plaintiff

7   instant claim against Defendant Coroner Ryan.

8        Plaintiffs argue that whenever the coroner takes custody of a dead body, according to the

9   law, he or she shall make a reasonable attempt to locate the family. (ECF No. 22 at 10.) Because

10   Coroner Ryan made no attempt to contact the family and the family was not informed about

11   Duran's death or cremation, Plaintiffs suffered harm and injuries. (ECF No. 1 at ¶ 173.)

12   Plaintiffs' interpretation of the law on this matter is correct.

13        Government Code § 27471(a) and Health and Safety Code §§ 7104 and 7104.1

14   collectively "impose upon the coroner a duty to act with reasonable diligence in attempting to

15   identify a body placed in his custody and then to attempt with reasonable diligence to locate some

16   family member." *Davila v. County of Los Angeles*, 50 Cal.App.4th 137, 143 (Cal.App.2d Dist.

17   1196). In *Davila*, the children of the deceased were not notified of their father's death until they

18   filed a missing persons report, after their father was cremated. *Id.* at 139. In its opinion, the court

19   reasoned that the legislative intent of Government Code § 27471 was to prevent injury to the

20   family and acknowledged the cultural and religious significance of the disposition of the

21   deceased. *Id.* at 141–42. The court held that a coroner must act with reasonable diligence in

22   attempting to identify the decedent's body and locating a family member. *Id.* at 143.

23        The reasoning in *Davila* is applicable here. Clearly, Government Code § 27471(a) and

24   Health and Safety Code §§ 7104 and 7104.1 are intended to apply to cremation and embalming.

25   *Id.* at 139 (holding the coroner has a duty to act with reasonable diligence in attempting to locate

26   next of kin before cremation). Here, as in *Davila*, Plaintiffs—Duran's next of kin—were not

27   notified of their son's death. Therefore, Plaintiffs plead sufficient facts to support their allegation

28   that Defendant Coroner Ryan failed to meet the requirements of Government Code § 27471(a)

21

1    and Health and Safety Code §§ 7104 and 7104.1.

2        H.   Tenth Cause of Action: Substantive Due Process – Notification and Burial

3        Plaintiffs bring their tenth cause of action under the substantive due process clause of the

4    Fourteenth Amendment of the U.S. Constitution against Warden Knipp, Coroner Ryan, and Casa

5    Bonita Funeral Home[9], arguing that there is a familial right and obligation under the Fourteenth

6    Amendment to bury one's family member.  (ECF No. 1 at ¶ 179.)

7        CDCR Defendants and Defendant Coroner Ryan argue that Plaintiffs' substantive due

8    process claim must be dismissed for two reasons.  (ECF No. 9-1.)  First, parents lack standing to

9    sue for the death of an adult child.  (ECF No. 9-1 at 14.)  And second, because the due process

10   clause is phrased as a limitation on State's power and not as a guarantee, Plaintiffs cannot sue

11   when there was no affirmative act by Coroner Ryan at issue.  (ECF No 9-1 at 15.)  Plaintiffs

12   argue that in certain situations the Ninth Circuit has recognized the existence of a parent's right to

13   control a deceased child's remains under the substantive due process clause.  (ECF No. 22 at 3.)

14   Furthermore, Plaintiffs argue the conspiracy between Coroner Ryan and CDCR constitutes an

15   affirmative action for purposes of the due process clause.  (ECF No. 22 at 4.)

16            i.   *Fourteenth Amendment Substantive Due Process Right Brought by the*

17                *Parent of an Adult Child*

18       "A parent's right to control a deceased child's remains and death images flows from the

19   well-established substantive due process right to family integrity."  *Marsh v. County of San*

20   *Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012).  The Ninth Circuit recognized a Fourteenth

21   Amendment due process interest of parents in the companionship and society of their adult

22   children when the deprivation was incidental to the state action.  *Toguchi v. Chung*, 391 F.3d

23   1051, 1060 (9th Cir. 2004) (holding that parents properly had a due process claim for their

24   mentally ill adult son who died in prison).  The family relationship, and not the narrower

25   custodial interest of parents, allows for the due process action.  *Johnson v. Bay Area Rapid*

26   *Transit*, 724 F.3d 1159, 1169 (9th Cir. 2013) (extending standing to a father bringing a

27   ───────────────────────

28   [9] Casa Bonita Funeral Home has not joined the remaining Defendants in moving to dismiss this claim.

1  substantive due process claim based on a violation of his right to his child's companionship when

2  the police shot and killed his child).

3          Other circuits have found parents' protected interests in the companionship of their child

4  ends when the child reaches the age of majority.  *Russ v. Watts*, 414 F.3d at 783, 790-91(7th Cir.

5  2005).  However, the Ninth Circuit is unique in recognizing the right of parents to sue in certain

6  situations.  *Toguchi*, 391 F.3d at 1060; *Johnson*, 724 F.3d at 1169.  From the facts alleged in the

7  complaint, Decedent clearly suffered from a mental condition.  Decedent's diagnosis included

8  bipolar disorder, depression, psychotic disorder not otherwise specified (NOS), and antisocial

9  personality disorder.  (ECF No. 1 at ¶ 38.)  Decedent also suffered from seizure disorder and

10  hallucinations.  (ECF No. 1 at ¶ 38.)  Further, Decedent had a known history of suicidality,

11  suicide attempts, suicidal ideation, and self-harming behavior.  (ECF No. 1 at ¶ 43.)  As a result,

12  he was hospitalized on a number of occasions in psychiatric inpatient hospitals.  (ECF No. 1 at ¶

13  40.)  Based on the foregoing, the Court finds Plaintiffs have a due process claim for the

14  companionship and society of Decedent, their mentally ill adult son.  *Toguchi* , 391 F.3d at 1060.

15                        *ii.  Willful, Affirmative Action on the Part of the Government*

16          The due process clause is a limitation on the State's power to act, not a minimum standard

17  of protection.  *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195.  The

18  Fourteenth Amendment was intended to prevent the government "from abusing its power, or

19  employing it as an instrument of oppression."  *Id.* (citing *Davidson v. Cannon*, 474 U.S. 344,

20  348.)  As such, the Supreme Court is unwilling to expand substantive due process beyond

21  affirmative governmental acts; therefore, an omission on the part of the state cannot be a due

22  process violation.  *Estate of Imrie v. Golden Gate Bridge Highway and Transp. Dist.*, 282 F.

23  Supp.2d 1145, 1148 (N.D. Cal. 2003).  There are two exceptions to the affirmative act rule: (1)

24  when the state has a special relationship with an individual; and (2) when the state had

25  affirmatively acted to place an individual in danger.  *Id.* at 200-201.

26          In this case, Coroner Ryan failed to inform the next of kin of Duran's death.  The failure

27  to inform constitutes an omission on the part of the state and is not protected under the due

28  process clause.  Furthermore, the exceptions to an affirmative act do not apply because Coroner

1    Ryan neither had a special relationship with Duran nor placed Duran in the place where Duran

2    experienced danger.

3         Plaintiffs allege in their Complaint and Opposition to the Motion to Dismiss, that Coroner

4    Ryan and Warden Knipp conspired to avoid informing the family of Duran's death and that they

5    willfully concealed Duran's death.  (ECF No. 1 at ¶ 125; ECF No. 22 at 4.)  While allegations of

6    conspiracy and willful concealment constitute affirmative acts on the part of the government,

7    Plaintiffs do no allege sufficient facts in their complaint for such an action.  (ECF No. 1 at ¶ 125.)

8    The alleged facts are insufficient to show that Coroner Ryan and Warden Knipp worked together

9    to conceal Duran's death.  The Ninth Circuit has held that when alleging conspiracy under a civil

10   rights claim, a mere allegation of conspiracy without factual specificity is insufficient.  *Karim-*

11   *Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).  The complaint must

12   contain more than legal conclusions and specify facts that support a conspiracy.  *Id.*  Plaintiffs

13   acknowledge the facts underlying their substantive due process claim are insufficient and request

14   leave to amend.  (ECF No. 22 at 4.)  The Court grants Defendants' Motion to Dismiss Plaintiffs'

15   claim with leave to amend.

16              I.   Eleventh Cause of Action: Procedural Due Process – Body and Burial[10]

17        Plaintiffs bring their eleventh cause of action under the procedural due process clause of

18   the Fourteenth Amendment, actionable under 42 U.S.C. § 1983, against Warden Knipp, Coroner

19   Ryan, and Casa Bonita Funeral Home[11], arguing Defendants, by failing to notify Duran's next of

20   kin, deprived Plaintiffs of their property right which constituted a violation of their Fourteenth

21   Amendment right to procedural due process.  (ECF No. 1 at ¶ 187.)

22        Defendants argue in their Motions to Dismiss that this count must be dismissed because it

23   does not meet the elements of the cause of action.  (ECF No. 9-1 at 17.)  Specifically, Defendants

24   argue that Plaintiffs have not demonstrated that they have a property right in the deceased's body

25   and therefore cannot bring a procedural due process claim for a deprivation by the state of

26

27   [10] Because both CDCR Defendants' and Defendant Coroner Ryan's arguments to dismiss the eleventh cause of action turn on the same issue, the Court discusses them together.
     [11] Casa Bonita Funeral Home has not joined the remaining Defendants in moving to dismiss this claim.

28

1  property.  (ECF No. 9-1 at 17.)

2          In Plaintiffs' Opposition to Defendants' Motions to Dismiss they argue that a

3  constitutional property right exists in a deceased's remains.  (ECF No. 22 at 6.)  Plaintiffs rely

4  and attempt to extend a Ninth Circuit case finding family members had a property right, and

5  therefore a procedural due process right, in the corneal tissue of their deceased family member.

6  (ECF No. 22 at 5–6.) (citing *Newman v. Sathyavaglswaran*, 287 F.3d 786 (9th Cir. 2002).  They

7  further argue that a procedural due process claim exists regardless of remedies available under

8  state law.  (ECF No. 22 at 6.)

9          A § 1983 claim based upon procedural due process has three elements: (1) a liberty or

10  property interest protected by the Constitution; (2) a deprivation of the interest by the

11  government; and (3) a lack of process.  *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th

12  Cir. 1993).  The due process clause "does not create substantive rights in property; the property

13  rights are defined by reference to state law."  *Id.*

14          California courts have been reluctant to find next of kin having property rights in their

15  relative's remains.  *Shelley v. County of San Joaquin*, 996 F. Supp.2d 921, 927 (E.D. Cal. 2014)

16  (holding that there is a quasi-property right in a deceased's remains for purposes of burial which

17  does not give rise to a procedural due process claim).  Plaintiffs argue that the Ninth Circuit has

18  held that parents in California have a procedural due process right in the corneal tissue of their

19  deceased children.  *Newman v. Sathyavaglswaran*, 287 F.3d 786 (9th Cir. 2002).  However, the

20  court in *Newman* was careful to limit its holding and not broadly recognize a property right in all

21  remains.  *Shelley*, 996 F. Supp.2d at 927.  Furthermore, at least one district court has recognized

22  the narrow scope of *Newman's* holding.  *Picon v. County of San Mateo*, No. C-08-766 SC, 2008

23  WL 2705576, at *3 (N.D. Cal. July 10, 2008) (holding that *Newman* could not be extended to

24  body parts other than corneas because at the time coroners were authorized to remove and release

25  corneal eye tissue from a body within the coroner's custody).  Therefore, there is no cognizable

26  property interest in the remains of one's relatives as a procedural due process claim under the

27  Fourteenth Amendment.  *Shelley*, 996 F. Supp.2d at 931.  In the instant case, there is no authority

28  for Plaintiffs' argument to extend a constitutional right of a deceased relative's corneal tissue to

1    the entire body.  Since a recognized property right is required in order to make a procedural due

2    process claim, Plaintiffs have not met the first element of proving a procedural due process

3    violation under 42 U.S.C. § 1983.  Accordingly, Defendants' Motion to Dismiss Plaintiffs'

4    procedural due process claim is granted without leave to amend.

5                    J.    Twelfth Cause of Action: Access to Courts[12]

6          Plaintiffs bring their twelfth cause of action under the First Amendment of the U.S.

7    Constitution, actionable under 42 U.S.C. § 1983, against Warden Knipp, Coroner Ryan, and Casa

8    Bonita Funeral Home[13], arguing that due to Defendants' active, willful, and successful

9    concealment of Duran's death, Plaintiffs were delayed from being able to bring a wrongful death

10   action under state law and were permanently deprived of their right to gather forensic evidence

11   through a second autopsy.  (ECF No. 1 at ¶ 190.)

12         Defendants, in their Motion to Dismiss, argue that Plaintiffs were neither precluded from

13   bringing their wrongful death claim nor prevented from gathering forensic evidence.  (ECF No. 9-

14   1 at 19.)  Defendants argue that a First Amendment claim requires actual injury which can only

15   be shown if the Defendants' actions foreclosed Plaintiffs from filing suit in court or rendered

16   ineffective any remedy.  (ECF No. 9-1 at 20.)  Defendants further maintain that because Plaintiffs

17   currently have a wrongful death claim before the Court, a mere delay in the filing does not

18   constitute actual harm.  (ECF No. 9-1 at 20.)

19         Plaintiffs argue they were permanently deprived of the ability to gather evidence from a

20   second autopsy to support their wrongful death claims due to the concealment of Duran's death.

21   (ECF No. 22 at 7.)  Plaintiffs further argue that the fact that their wrongful death claims are a

22   pending cause of action does not demonstrate Plaintiffs were not irreparably hindered.  (ECF No.

23   22 at 8.)

24         The Supreme Court has held that the right to access courts is protected by the

25   Constitution.  *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998).  "[T]he Constitution

26

27   [12] Defendant CDCR joins Defendant Ryan in dismissing the twelfth cause of action.  The Court addresses both
     Defendants' arguments together.
     [13] Casa Bonita Funeral Home has not joined the remaining Defendants in moving to dismiss this claim.

28

guarantees plaintiffs the right of meaningful access to the court, the denial of which is established where a party engages in pre-filing actions which effectively covers-up evidence and actually renders any state court remedies ineffective." *Id*.  However, a plaintiff cannot guess that a state court remedy is ineffective due to defendant's action.  *Id*.  Plaintiffs must demonstrate that defendant's actions violated Plaintiffs' access to the court by rendering the remedy ineffective. *Id*. at 1223.  Furthermore, when a wrongful death action remains pending in court, it is impossible to determine if defendant violated plaintiff's access to the courts.  *Id*.  The court in *Delew* found that where the wrongful death action was still pending, the district court should have dismissed the 42 U.S.C. § 1983 claim without prejudice and allowed plaintiff to re-file their claims once the pending wrongful death action was actually rendered ineffective.  *Id*.; *see also*, *Robinson v. Cnty. of Shasta*, No. 2:14-CV-02910-KJM, 2015 WL 5436716, at *4 (E.D. Cal. Sept. 15, 2015) (dismissing § 1983 claim as unripe where plaintiff also filed a wrongful death action within the same complaint) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)); *Waiton v. City of Santa Rose*, No. 13-03218, 2014 WL 3362160, at *2–3 (N.D. Cal. July 7, 2014) (dismissing without prejudice a plaintiff's cover-up-based denial of access claim because he could not, at that time, allege "that any defendant's actions prevented him from pursuing or perfecting a case in the courts"); *Carr v. Her*, No. 09-0826, 2012 WL 259457, at *12 (E.D. Cal. Jan. 25, 2012) ("A cover-up claim is premature when, as here, plaintiff's action seeking redress for the underlying constitutional violations remains pending."); *Madrigal v. City of Santa Maria*, No. 10-4479, 2011 WL 486559, at *6 (C.D. Cal. Feb. 7, 2011) ("[T]he Court finds that Plaintiffs' access to courts claim is not ripe for judicial consideration, because the underlying litigation has not concluded and thus Plaintiffs cannot yet show the extent to which they were injured as a result of Defendants' alleged misconduct.").

Similar to the *Delew* case, Plaintiffs in this case currently have a pending wrongful death action against Defendants.  (ECF No. 1 at ¶ 160.)  Pursuant to the instant Order, the wrongful death claim alleged against all Defendants remains after Defendants' Motion to Dismiss. Because the wrongful death action is still pending within this Court, it is impossible to determine whether Defendants violated Plaintiffs' access to court by rendering the remedy ineffective.

1   Therefore, Plaintiffs in this case must allow their pending wrongful death claim to proceed before

2   bringing their twelfth cause of action.  Accordingly, Defendants' motion to dismiss is granted,

3   and Plaintiffs' twelfth cause of action is dismissed without prejudice allowing them to re-file their

4   claim once their pending wrongful death claim is actually rendered ineffective.

5                  K.   Coroner Ryan Qualified Immunity

6          Coroner Ryan argues he is entitled to qualified immunity with regards to Plaintiffs' due

7   process claims.  (ECF No. 9-1 at 22.)  Since Defendants' motion to dismiss is granted as to the

8   due process claims, the Court does not reach a finding on the matter of Defendants' qualified

9   immunity.

10      **IV.    CONCLUSION**

11          For the reasons set forth above, the Court hereby GRANTS IN PART and DENIES IN

12   PART Defendants' Motion to Dismiss.  (ECF No. 16; ECF No. 9.)  The Court orders as follows:

13      1.  CDCR Defendants' Motion to Dismiss Counts I, II, III, IV, V, and VII for Standing is

14          GRANTED WITH LEAVE TO AMEND.

15      2.  CDCR Defendants' Motion to Dismiss Count VII for Standing is DENIED.

16      3.  CDCR Defendants' Motion to Dismiss Count III is DENIED.

17      4.  CDCR Defendants' Motion to Dismiss Count IV is DENIED.

18      5.  CDCR Defendants' Motion to Dismiss Count V is GRANTED WITH LEAVE TO

19          AMEND as to Dr. Heatley, CEO Smiley, and Warden Knipp, and DENIED as to Sergeant

20          Carrillo and Lieutenant McCloughan.

21      6.  CDCR Defendants' Motion to Dismiss Count VI is GRANTED WITH LEAVE TO

22          AMEND as to Sergeant Carrillo, Warden Knipp, CEO Smiley, and Dr. Heatley and

23          DENIED as to Dr. Anand.

24      7.  CDCR Defendants' Motion to Dismiss Count VII is GRANTED WITH LEAVE TO

25          AMEND as to Dr. Heatley and DENIED as to Dr. Ortigo.

26      8.  CDCR Defendants' Motion to Dismiss Count VIII is GRANTED WITH LEAVE TO

27          AMEND.

28      9.  Defendant Coroner Ryan's Motion to Dismiss Count VIII is DENIED.

28

10. Defendant Coroner Ryan's Motion to Dismiss Count X, joined by CDCR Defendants, is GRANTED WITH LEAVE TO AMEND.

11. CDCR Defendants' Motion to Dismiss and Defendant Coroner Ryan's Motion to Dismiss Count XI is GRANTED WITHOUT LEAVE TO AMEND.

12. CDCR Defendants' Motion to Dismiss and Defendant Coroner Ryan's Motion to Dismiss Count XII is GRANTED WITH LEAVE TO AMEND.

The Court shall allow Plaintiffs to file an amended complaint as to the standing issues related to Counts I, II, III, IV, and V and the substantive issues related to Counts V, VI, VII, VIII, X, and XII. Should Plaintiffs elect to do so, it must be filed with this Court within twenty-one (21) days from the entry of this order.

Dated:  December 4, 2015

Troy L. Nunley
United States District Judge

29